UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE: | 18-CV-6312 (JPO) |
| AVAYA INC., et al., | OPINION AND ORDER |
| Debtors. |  |

J. PAUL OETKEN, District Judge:

This is a bankruptcy appeal involving a telecommunications company and one of its former suppliers. At issue in this appeal is a procedure called claim estimation, which allows a bankruptcy court to estimate the value of a creditor's claims against a debtor for purposes of avoiding undue delay in the administration of the bankruptcy proceedings. *See* 11 U.S.C. § 502(c). Appellant-creditors SAE Power Incorporated and SAE Power Company (together, "SAE") contend that the Bankruptcy Court below committed reversible error in estimating the value of SAE's trade-secret, contract, and fraud claims against appellee-debtor Avaya, Inc. ("Avaya"). Because the bankruptcy court committed no such error, its decision is affirmed.

## I.      Background

The factual and procedural background of this dispute is largely set forth in the Bankruptcy Court's Memorandum Decision estimating SAE's claims against Avaya. *In re Avaya Inc.*, No. 17-10089, 2018 WL 1940381, at *1–6 (Bankr. S.D.N.Y. Apr. 23, 2018). The Court recounts below only those aspects of this case's factual and procedural background that are relevant to this appeal.

SAE is a manufacturer of electronic components and power supplies. *Id.* at *1. Avaya is a technology company specializing in communications systems. *Id.* Among Avaya's products is the G650 Media Gateway (the "G650"), which is a server designed to integrate land-line

telecommunications systems with Voice-over-Internet-Protocol networks. *Id.* At issue in this appeal are certain component parts of the G650, specifically two power-supply units designed to convert AC voltage into DC voltage in order to power the G650. *Id.* SAE was the initial manufacturer of the G650's power-supply units, and SAE produced these units for Avaya from 2003 to 2008. *Id.* at *1–2. But by 2008, Avaya had opted to retain a different supplier, Delta Products Corporation ("Delta"). *Id.* at *2. SAE asserts that when switching suppliers, Avaya misappropriated SAE's trade secrets related to the functioning of the power-supply units. *See id.* at *1.

In January 2010, SAE filed suit against Avaya in the United States District Court for the District of New Jersey (*see* A-166–86[1] (SAE's initial complaint against Avaya)), and the amended complaint in that suit asserted, among other things, claims of breach of contract, unjust enrichment, fraud, and misappropriation of trade secrets (*see* A-188–230 (SAE's amended complaint)). As the Bankruptcy Court fairly summarized, "[t]he gravamen of SAE's claims was that Avaya misappropriated SAE's trade secrets by providing Delta with samples of SAE's [power-supply units] as well as SAE's plans and specifications to allow Delta to reverse engineer the [power-supply units]." *In re Avaya Inc.*, 2018 WL 1940381, at *2. In January 2011, the parties stipulated to the dismissal of SAE's federal suit on jurisdictional grounds, *see id.*, and SAE refiled its complaint in New Jersey Superior Court (*see* A-107–49 (SAE's state court complaint against Avaya)). On July 19, 2016, the New Jersey Superior Court granted partial summary judgment to Avaya, dismissing SAE's claims against Avaya to the extent that they "related to Avaya having provided SAE [power-supply units] to [Delta] or [Delta] having

---

[1] Citations to materials from the Bankruptcy Court docket will, when possible, refer to Avaya's reproduction of those materials as an appendix to its brief. (*See* Dkt. Nos. 29-2 through 29-9.)

received, opened, inspected, tested, studied, or copied such SAE [power-supply units]," but allowing SAE to proceed to discovery on claims based on Avaya's alleged sharing of some of SAE's internal test reports and other confidential information with Delta.[2] (A-243.)

On January 19, 2017, Avaya initiated Chapter 11 bankruptcy proceedings, automatically staying SAE's New Jersey lawsuit. *See In re Avaya Inc.*, 2018 WL 1940381, at *2. SAE then filed with the Bankruptcy Court a proof of claim for its stayed "breach of contract, theft of trade secrets, [and] fraud" claims against Avaya, and, following various amendments to its proof of claim, SAE eventually valued those claims at $379,414,364.00, exclusive of interest. (A-247.) Avaya objected to SAE's claims, as well as to SAE's valuation of those claims. (A-69.) At a September 13, 2017 conference addressing Avaya's objections, the Bankruptcy Court resolved to estimate SAE's claims, and it directed the parties to confer and propose "an estimation procedure . . . for distribution purposes." (A-327.)

On September 28, 2017, SAE and Avaya stipulated to an estimation procedure. (A-364–69.) The parties agreed to stipulate (for claim estimation purposes only) to certain of the factual allegations regarding liability that had been set forth by SAE in the underlying New Jersey proceedings, and they agreed that the amount of SAE's damages would be estimated by the Bankruptcy Court following a hearing that would consist exclusively of expert witness testimony. (A-366.) SAE agreed to produce any expert reports it intended to rely on in connection with the estimation hearing on or before October 5, 2017, and Avaya agreed to produce its expert reports on or before October 11, 2017. (A-367.) The parties further agreed that "[a]ll exhibits to be used in the hearing" would be "either identified in one of the expert

---

[2] SAE represents that upon the recommencing of the New Jersey litigation, it intends to appeal the New Jersey state court's adverse summary judgment holdings. (Dkt. No. 10 at 14.)

reports to be submitted in accordance with [the stipulation's deadlines] or used in the depositions of an expert." (A-366.) SAE then submitted an economics expert report from Michael LoGiudice (A-1056–80), and Avaya submitted an economics expert report from Jonathan Arnold (A-985–1041) and a technical expert report from Mark Horenstein (A-577–647).

On October 13, 2017, SAE filed an "emergency" motion in limine to exclude Horenstein's expert testimony from the estimation hearing. (A-411–28.) The nub of SAE's objections to Horenstein's report was that Horenstein's report failed to properly assume the fact of Avaya's liability for the misappropriation of SAE's trade secrets, which contravened the parties' stipulation that Avaya would not attempt to contest liability at the estimation hearing. (*See, e.g.*, A-412, A-421.) Then, on October 15, 2017, SAE filed an amended version of LoGiudice's economics expert report. (A-1085–1102.) Soon thereafter, the parties agreed to the following changes to their proposed estimation procedures and deadlines: SAE would withdraw its motion in limine and Avaya would not object to LoGiudice's amended report, and the parties would forego the damages hearing they had previously stipulated to and instead allow the Bankruptcy Court to conduct its estimation on the papers alone. (A-502–03; *see also* A-505, A-533 ¶ 3.) The parties further agreed that SAE would serve no additional expert reports, that Avaya would be permitted to serve one final additional expert report from Arnold, and that on November 1, 2017, SAE and Avaya would each submit simultaneous briefing addressing the parties' expert reports and attached exhibits. (A-532–33 ¶¶ 1–2.)

When the November 1, 2017 briefing deadline arrived, SAE attached to its brief a declaration from one of its lawyers with a chart highlighting "factual errors in the report of Avaya's expert Dr. Horenstein." (A-1155 ¶ 6.) Although the chart did not cite any evidence or exhibits in support of SAE's objections to the Horenstein report (*see generally* A-1244–52),

SAE's counsel represented to the Bankruptcy Court that her firm was "ready and willing to provide evidentiary support . . . regarding the statements made in [the chart] upon . . . request" (A-1155 ¶ 6). Then, on January 12, 2018, SAE submitted a declaration from Allan Brown, its Chief Technical Officer ("CTO"), explaining that he had prepared the chart that had been attached to SAE's claim-estimation brief and setting forth his qualifications for having done so. (A-1306–09.) Avaya moved to strike the Brown declaration on timeliness grounds, arguing that Brown's declaration was essentially an untimely expert rebuttal to Horenstein's report. (A-1316–22.) The Bankruptcy Court agreed with Avaya that Brown's declaration was untimely based on the parties' stipulated estimation procedures and briefing schedules. (*See* A-1353.) In describing the Brown declaration as a belated attempt to rebut Horenstein's report, the Bankruptcy Court also noted that that aside from that declaration, SAE had failed to rebut Avaya's technical expert evidence with anything other than attorney argument; the Bankruptcy Court explained that if SAE had wanted to establish an evidentiary basis for those arguments, it should have moved to modify the parties' stipulated briefing schedule, in order to allow SAE to submit a rebuttal expert report past the deadline for the filing of such reports. (A1352–55.) SAE not having done so, the Bankruptcy Court granted Avaya's motion to strike the Brown declaration. (A-1357.)

With briefing on the estimation of SAE's claims against Avaya then closed, the Bankruptcy Court issued its Memorandum Decision estimating SAE's claims against Avaya ("the Opinion") on April 23, 2018. (A-1473–99.) For reasons already explained, the Bankruptcy Court explained that "the evidentiary record consist[ed] of the *Horenstein Report*, two reports by LoGiudice, two reports by [Avaya's] damages expert, Jonathan I. Arnold, and the exhibits attached to the parties' trial briefs," *In re Avaya Inc.*, 2018 WL 1940381, at *3, and noted that

"SAE did not submit a report from a technical expert to rebut any of Horenstein's conclusions," *id.* at *4. Having thus defined the scope of the trial record, the Bankruptcy Court then assessed and summarized the facts and conclusions to be drawn from the parties' properly filed expert reports and exhibits. *See id.* at *3–6.

The Bankruptcy Court then turned to its discussion of the law governing damages for SAE's trade-secret claims, *id.* at *6–8, and to an assessment of each party's evidentiary submissions and damages contentions in light of the law governing SAE's claims, *id.* at *8–10. The Bankruptcy Court resolved to "reject[] SAE's damage estimates in their entirety for several reasons" fully enumerated in the Opinion, *id.* at *8, and instead found that "Avaya based its estimates on established methodologies, supported by expert testimony on the relevant technical aspects of the trade secrets," *id.* at *9. The Bankruptcy Court ultimately "conclude[d] that a reasonable royalty is the appropriate measure of [SAE's trade-secret] damages, . . . and estimate[d] the [trade-secret] [m]isappropriation [c]laim in the sum of $1.21 million, exclusive of interest." *Id.* at *10. It reached this estimate on the basis of Avaya's experts' testimony that Avaya would have enjoyed relatively low cost savings as a result of its alleged misappropriation of SAE's trade secrets, and that the amount of those savings represented the "upper value of a royalty a hypothetical licensee would be willing to pay for use of the trade secret and still retain a profit." *Id.*

Turning to SAE's other claims, the Bankruptcy Court estimated SAE's fraud claim at zero dollars, finding "no proof of fraud or evidence needed to calculate damages based on fraud." *Id.* at *11. Finally, the Bankruptcy Court declined to estimate SAE's contract claim on the ground that it was "not the appropriate subject of estimation." *Id.* The Bankruptcy Court reached this conclusion because the contract claim raised difficult and unresolved factual and

legal questions, and because the minimal value of that claim relative to other claims in Avaya's bankruptcy proceedings meant that its remaining unresolved would not unduly delay the administration of the bankruptcy proceedings.  *Id.*

The Bankruptcy Court thereafter issued an order memorializing the Opinion's conclusions and estimating SAE's trade-secret and fraud claims against Avaya.  (A-1500–03.) This is the order from which SAE now appeals.[3]  (Dkt. No. 1.)  SAE's appeal from this order has been fully briefed (Dkt. Nos. 10, 29, 32), and the Court is now prepared to rule.

## II.    Standard of Review

A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*.  *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). With respect to a bankruptcy court's factual findings, clear error exists only where a reviewing court is "left with the definite and firm conviction that a mistake has been committed."  *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).  For a mixed question of law and fact, the standard of review "depends . . . on whether answering it entails primarily legal or factual work."  *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018).

"A bankruptcy court's decision to employ a particular means of estimating a claim may be reversed only for abuse of discretion."  *In re Seaman Furniture Co. of Union Square, Inc.*, 160 B.R. 40, 42 (S.D.N.Y. 1993) (collecting cases); *accord In re Mud King Prods., Inc.*, No. 14

---

[3] This Court has jurisdiction to hear SAE's appeal pursuant to 28 U.S.C. § 158(d), because the order below "effectively concluded the dispute" between SAE and Avaya over the maximum value of SAE's claims, and because "orders finally settling creditors' claims are separately appealable."  *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006) (internal quotation marks omitted).

Civ. 2316, 2015 WL 862319, at *2 (S.D. Tex. Feb. 27, 2015) ("[B]ankruptcy courts are afforded

substantial deference in this area, and errors assigned both to its estimates and its methods for

achieving such estimates generally will be reviewed only for an abuse of discretion." (citation

omitted)) (collecting cases). Similarly, a bankruptcy court's exclusion of expert testimony is

reviewed for an abuse of discretion. *In re Bd. of Dirs. of Telecom Arg., S.A.*, 528 F.3d 162, 175

(2d Cir. 2008). "[A] bankruptcy court 'abuses its discretion if it rests its conclusion on clearly

erroneous factual findings or an incorrect legal standard.'"[4] *In re Globo Comunicacoes e*

*Participacoes S.A.*, 317 B.R. 235, 245 (S.D.N.Y. 2004) (quoting *In re McGowan*, 226 B.R. 13,

16 (B.A.P. 8th Cir. 1998)).

## III.    Discussion

In overseeing bankruptcy proceedings, bankruptcy judges are authorized to estimate for

purposes of allowance "any contingent or unliquidated claim, the fixing or liquidation of which,

as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1).

"Bankruptcy courts have wide discretion in choosing the process for estimating a claim. The

methods used by courts have run the gamut from summary trials to full-blown evidentiary

hearings to a mere review of pleadings, briefs, and a one-day hearing involving oral argument of

counsel." *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 520 (E.D.N.Y. 1994) (internal

---

[4] SAE contends that the Bankruptcy Court committed legal error when estimating SAE's claims and in excluding its expert's testimony, and that those rulings therefore must be subject to *de novo* review. (Dkt. No. 32 at 2–5.) But, as the authorities cited above demonstrate, the "abuse of discretion" standard of review applies to the Bankruptcy Court's chosen methods of estimating SAE's claims and its exclusion of SAE's expert's testimony. Of course, SAE is correct that if the Bankruptcy Court applied an incorrect legal standard *en route* to reaching these conclusions, then this Court would be compelled to hold that the Bankruptcy Court did in fact abuse its discretion. *See In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. at 245. And, as it must, this Court will review all of the Bankruptcy Court's underlying legal conclusions *de novo*. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d at 103.

citations omitted). Despite their broad discretion in selecting a method of estimation, however, bankruptcy judges still remain "bound . . . by 'the legal rules which may govern the ultimate value of the claim . . . [and] those general principles which should inform all decisions made pursuant to the [Bankruptcy] Code.'" *Id.* (second and third alterations in original) (quoting *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135–36 (3d Cir. 1982)).

Here, the parties stipulated to the method of claim estimation that was employed by the Bankruptcy Court (*see, e.g.*, A-362–69, A-530–34), and SAE does not contend that any features of the parties' stipulated-to method independently provides a basis for reversal. But SAE asserts that the Bankruptcy Court committed eight distinct factual and legal errors in applying the parties' agreed-upon method and in reaching its ultimate estimation of the value of SAE's claims. (*See* Dkt. No. 10 at i–ii.) SAE's arguments on appeal may fairly be grouped into three categories: (1) that the Bankruptcy Court erred when it relied on the report of Avaya's technical expert, Horenstein, and when it excluded the testimony of SAE's CTO, Brown (Dkt. No. 10 at 16–27), (2) that the Bankruptcy Court failed to properly estimate the value of SAE's trade-secret claims based on the assumption that Avaya was in fact liable for those claims (Dkt. No. 10 at 9–16, 28–49), and (3) that the Bankruptcy Court erred when it provided a zero-dollar estimation of SAE's fraud claim and when it declined to estimate SAE's contract claim (Dkt. No. 10 at 27–28). The Court addresses each group of arguments in turn.

## A. Expert Testimony

### 1. Reliance on Horenstein Report

SAE contends that the Bankruptcy Court erred when it admitted the Horenstein report into evidence and afforded the report any weight in estimating the value of SAE's claims. (*See generally* Dkt. No. 10 at 16–23.) SAE's arguments on appeal essentially boil down to the contentions that the Horenstein report failed to assume Avaya's liability for trade-secret

misappropriation and was thus inadmissible on relevance grounds, and that the report's conclusions were contradicted by other facts in the record before the Bankruptcy Court.

With respect to admissibility, the Court concludes that SAE's arguments are both waived and meritless.  Starting with waiver, the Court agrees with Avaya that SAE waived its argument that the Bankruptcy Court could not consider the Horenstein report when it expressly withdrew its in limine objections to that report.  (*See* Dkt. No. 29 at 33–36.)  As the Court has already discussed, SAE agreed to "withdraw [its] motion in limine" that sought to exclude the Horenstein report in connection with its agreement with Avaya to resolve Avaya's threatened objections to one of SAE's own expert reports.  (A-503; *see also* A-505 ("We've agreed that we would withdraw our motion in limine[.]"); A-533 (stipulating that "SAE withdrew its motion in limine to exclude the expert report of [Avaya's] expert Dr. Mark Horenstein.").)  SAE now presents on appeal the same relevance arguments that SAE had previously agreed to withdraw. (*Compare, e.g.*, Dkt. No. 10 at 16–17 ("The [Bankruptcy] Court erred in admitting the [Horenstein] report . . . because it was irrelevant and contravened the premise that Avaya's liability must be assumed."), *with* A-412–13 ("Though portions of Horenstein's opinion may be relevant at a future trial on liability, SAE submits that to allow his report . . . now would unnecessarily and improperly distract from the goal of the Estimation Hearing, which is to calculate damages[,] not determine liability.").)

A party's express withdrawal of an evidentiary objection waives that party's right to pursue that objection on appeal.  *See, e.g.*, *United States v. Ojeda*, 412 F. App'x 410, 412 (2d Cir. 2011) ("Where a defendant indicates that the district court's proposed resolution of an issue is satisfactory, he waives his right to appeal that resolution.  Although [appellant] initially moved to exclude evidence  . . . , he withdrew that objection . . . .  This conduct waived [that objection

on appeal].” (citations omitted)); Wright & Miller, 21 Federal Practice & Procedure § 5039.4
(“‘[W]aiver’ is clearest where after having made an objection [to the admission of evidence], the
objector explicitly withdraws it.”).  The Court thus concludes that SAE’s contentions on appeal
with respect to the Horenstein report’s admissibility have been waived by SAE, by virtue of
SAE’s willing withdrawal of a motion in limine presenting these same contentions to the
Bankruptcy Court.

Even if SAE had not waived its objections to the Bankruptcy Court’s consideration of the
Horenstein report, those objections are in any event without merit.  As the Court will explore
further below, *see infra* Section III.B., it agrees with both Avaya and the Bankruptcy Court that
the Horenstein report’s key conclusions—including those regarding the relative import of SAE’s
trade secrets to its power-supply units, the relative import of those power-supply units to the
overall functioning of Avaya’s G650, the difficulties Avaya might have faced in independently
developing similar units, and the extent to which other suppliers on the market would have been
able provide similarly functioning units—are all relevant to assessing trade-secret damages, even
after underlying liability has been established.  *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.,* 773
F.3d 1201, 1226 (Fed. Cir. 2014) (explaining that where infringed-upon intellectual property is
only a portion of the infringing product, a plaintiff’s recovery “must reflect the value attributable
to the infringing features of the product, and no more”);[5] *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F.

_____

[5] Courts have deemed it “generally accepted that ‘the proper measure of damages in the
case of a trade secret appropriation is to be determined by reference to the analogous line of
cases involving patent infringement, just as patent infringement cases are used by analogy to
determine the damages for copyright infringement.’”  *Univ. Computing Co. v. Lykes-Youngstown
Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) (quoting *Int’l Indus., Inc. v. Warren Petroleum Corp.*,
248 F.2d 696, 699 (3d Cir. 1957)).  Both parties here cite Federal Circuit patent cases in
presenting their arguments with respect to the appropriate measure of damages for SAE’s trade-
secret claims (*see, e.g.*, Dkt. No. 10 at 29; Dkt. No. 29 at 28–30), and SAE does not contend on
appeal that the Bankruptcy Court should not have relied on out-of-Circuit patent cases when

Supp. 2d 182, 185 (S.D.N.Y. 2002) (listing factors relevant to trade-secret damages as including "the cost of developing the trade secret"); *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia–Pac. Corp. v. U.S. Plywood-Champion Papers Inc.*, 446 F.2d 295 (2d. Cir. 1971) (listing the "utility and advantages of the patent property over [other] modes or devices, if any, that had been used for working out similar results" and the "portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements" as factors relevant to assessing reasonable-royalty damages). As these cases make clear, the Bankruptcy Court was correct when it explained that even if the question of "whether or not something was a trade secret [was] not before" it, "how long it remains a trade secret, . . . or for how long [the infringer] ha[s] to pay . . . for infringing that trade secret[] does require [the] consider[ation of] certain technical issues" of the sort addressed by the Horenstein report. (A-1355.) Accordingly, even to the extent that SAE has not waived any of its relevance objections to the Bankruptcy Court's reliance on the contents of the Horenstein report in connection with these questions, its objections are without merit.

Finally, the Court turns to SAE's argument that even if the Bankruptcy Court appropriately considered the Horenstein report, it erred in assigning the report any weight, because the report's conclusions contradicted other evidence before the court. This Court has reviewed for clear error the Bankruptcy Court's reliance on the contents of the Horenstein report in reaching its factual conclusions, and has found none. Horenstein was indisputably qualified to testify as a technical expert with respect to the role of SAE's trade secrets in the G650's functioning (*see* A-583–85), and he conducted a thorough, persuasive, and fact-intensive analysis

estimating SAE's trade-secret damages. This Court thus treats the Federal Circuit's line of patent cases as instructive in reviewing the Bankruptcy Court's estimation of damages.

of the contributions of SAE's trade secrets to the functioning of the G650, as well as an analysis of the extent to which other technologies on the market might have performed similarly (*see generally* A-577–647). Moreover, as the Bankruptcy Court noted, "SAE did not submit a report from a technical expert to rebut any of Horenstein's conclusions." *In re Avaya Inc.*, 2018 WL 1940381, at *4. The Bankruptcy Court's willingness to credit the opinions of an unrebutted and qualified expert does not leave this Court "with the definite and firm conviction that a mistake has been committed." *In re Manville Forest Prods. Corp.*, 896 F.2d at 1388 (internal quotation marks omitted).

In sum, the Bankruptcy Court's reliance on the Horenstein report does not present a basis for reversal.

### 2. Striking of Brown's Testimony

SAE contends that the Bankruptcy Court erred by refusing to consider the declaration of Allan Brown, an executive with SAE who was among those primarily responsible for developing the power-supply units at issue. (Dkt. No. 10 at 23.)

The Bankruptcy Court struck Brown's declaration on timeliness grounds. (*See generally* A1350–55.) The Court finds no error or abuse of discretion in the Bankruptcy Court's having done so. In fact, the record confirms that Brown's report was indeed untimely. The parties had stipulated to a schedule for producing expert reports (A-367), and when modifying other aspects of their claim-estimation procedures, the parties again stipulated that SAE would be allowed to submit no further expert reports (A-533 ¶ 2). The Brown declaration was submitted months after these stipulations and deadlines. (*See* A-1306–09.) It was thus untimely.[6]

---

[6] To the extent the Brown declaration was offered as fact-witness testimony, the Bankruptcy Court correctly declined to consider the testimony on the ground that the parties had agreed that the Bankruptcy Court would "not [be] taking fact witnesses." (A-1353; *see also* A-366 (stipulating to conducting the estimation hearing based on expert testimony alone); A-532–

On appeal, SAE simply renews the same arguments as to timeliness that the Bankruptcy Court correctly rejected. (*Compare* Dkt. No. 10 at 23–27, *with* A-1350–54.) Essentially, SAE first appended a chart challenging the Horenstein report to its claim-estimation brief. (*See* A-1155 ¶ 6, A-1244–52.) The chart offered no evidentiary basis for its challenges to Horenstein's report. (*See id.*) When submitting this chart, SAE expressed that it was "ready and willing to provide evidentiary support . . . regarding the statements made in [the chart] upon . . . request." (A-1155.) SAE now asserts, just as it did in the Bankruptcy Court, that the Brown declaration was simply the promised evidentiary foundation for the chart. (*See* Dkt. No. 10 at 24–25.) But SAE's submission of unfounded attorney argument did not create a window for it to belatedly submit evidence in support of those arguments, particularly when doing so was clearly in violation of the parties' stipulated deadlines for evidentiary submissions. Instead, the Bankruptcy Court correctly granted Avaya's motion to strike the untimely Brown declaration.

## B.  Estimation of SAE's Trade-Secret Claims

SAE on appeal challenges the outcome of the Bankruptcy Court's estimation of SAE's trade-secret claims. SAE's various arguments essentially boil down to two broader points: (1) that the Bankruptcy Court failed to assume Avaya's underlying liability, as it was required to do by the parties' stipulation establishing their claim-estimation procedures (Dkt. No. 10 at 9–16); and (2) that even if assuming Avaya's liability, the Bankruptcy Court committed reversible legal and factual errors when estimating SAE's damages (Dkt. No. 10 at 28–49). The Court addresses each of SAE's points each in turn.

---

33 (stipulating to limiting attachments to estimation briefing to only expert reports and expert-report exhibits).)

### 1. Assuming Avaya's Underlying Liability

SAE contends that the Bankruptcy Court erred by failing to assume Avaya's liability for purposes of estimating damages for SAE's trade-secret claims. (Dkt. No. 10 at 9–16.) Avaya does not dispute that the parties had stipulated to the fact of Avaya's liability for purposes of the claim estimation. (*See* Dkt. No. 29 at 2 ("[Avaya] . . . assumed liability for trade secret misappropriation."); *see also, e.g.*, A-366 ("[T]he parties will endeavor to work together to provide the court with an agreed-upon statement of allegations set forth in the underlying litigation that will be assumed as facts solely for purposes [of] estimating the amount sought in the disputed SAE Proof of Claim . . . .").) Avaya contends, however, that the Bankruptcy Court *did* assume Avaya's liability. (Dkt. No. 29 at 24.)

A review of the Bankruptcy Court's rulings below confirms that it did in fact assume Avaya's liability in the manner that was required by the parties' stipulation. For example, at the hearing in which the Bankruptcy Court addressed Avaya's motion to strike Brown's testimony, the Bankruptcy Court repeatedly recognized that "the fact that [SAE's technologies were] trade secrets is not in dispute." (A-1350; *see also* A-1352 (acknowledging that "[e]verybody agrees for purposes of this proceeding" that SAE held trade secrets in the relevant technologies); A-1355 ("I agree with you that whether or not something was a trade secret is not before me.").) And in the Opinion in which the Bankruptcy Court explained the basis for its estimation of SAE's trade-secret claims, the Bankruptcy Court again made clear that its holding was based on the recognition that "Avaya conceded for the purpose of the estimation proceeding that it was liable for misappropriation" of SAE's trade secrets. *In re Avaya Inc.*, 2018 WL 1940381, at *8 n.8. Indeed, one wonders how the Bankruptcy Court could have estimated SAE's trade-secret claims as valued at over $1.2 million if it did not find or assume in the first instance that Avaya was in fact liable to SAE for trade-secret misappropriation. *See id.* at *10.

SAE fails to identify any persuasive basis for not taking the Bankruptcy Court at its word. What SAE essentially argues on appeal is that in assuming Avaya's liability, the Bankruptcy Court was forbidden from inquiring into any facts relevant to the elements of SAE's underlying misappropriation claims, and so should have been required to accept that the misappropriated information "was of critical value to SAE and its competitors" and that "the information could not be properly acquired or duplicated by others." (Dkt. No. 10 at 11 (formatting omitted); *see also id.* at 13–16 (arguing that the Bankruptcy Court erred in considering whether SAE's competitors could have reverse engineered its products even without direct knowledge of its trade secrets).) According to SAE, the Bankruptcy Court deviated from these required presuppositions when concluding, among other things, that the record "provided unrefuted evidence that at least three other companies made a competitive product" and that "Avaya could have reverse engineered the SAE [product] or developed one from scratch within a short period of time and at minimal expense just as SAE had done." *In re Avaya Inc.*, 2018 WL 1940381, at *8.

SAE's argument leaves one wondering: What *was* the Bankruptcy Court allowed to have considered in estimating SAE's trade-secret damages, if not the value of those trade secrets to SAE and to the market, or the availability to Avaya of alternatives to relying on SAE's trade secrets? As the Bankruptcy Court noted, even though "Avaya [had] conceded for the purpose of the estimation proceeding that it was liable for misappropriation," the Bankruptcy Court was still required to assess "the *amount* of [Avaya's] liability—that was the reason for the estimation proceeding." *Id.* at *8 n.8 (emphasis added). That is just what the Bankruptcy Court did. It is well settled that factors relevant to assessing the *amount* of damages in trade-secret cases, even "[o]nce it is established that a trade secret has been misappropriated," may include "the cost of

developing the trade secret" and the "value of what the defendant wrongfully obtained from the plaintiff." *LinkCo, Inc.*, 232 F. Supp. 2d at 185–86 (third quoting *Vt. Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir. 1996)); *see also, e.g.*, *Schreyer v. Casco Prods. Corp.*, 190 F.2d 921, 924 (2d Cir. 1951) (noting that damages for misappropriation of propriety information would be based on advantages defendant gained from relying on that information relative to extent to which those advantages were otherwise obtainable through "independent research"); Restatement (Third) of Unfair Competition § 45 cmt. h ("Monetary remedies [for trade-secret misappropriation] . . . are appropriate only for the period of time that the information would have remained unavailable to the defendant in the absence of the appropriation. This period may be measured by the time it would have taken the defendant to obtain the information by proper means such as reverse engineering or independent development.").

The Bankruptcy Court's inquiring into the value of SAE's trade secrets throughout the period of alleged misappropriation, as well as the extent to which SAE's trade secrets might have been independently discoverable or worked around by Avaya during that period, did not contravene the Bankruptcy Court's duty to assume Avaya's liability. Instead, even with liability assumed, the Bankruptcy Court had no choice but to consider these factors in estimating SAE's trade-secret damages. The Bankruptcy Court thus did not err in failing to assume Avaya's liability for purposes of its estimation of SAE's trade-secret claims.

## 2. Damages Calculations

SAE contends that even if the Bankruptcy Court did in fact estimate SAE's damages based on the assumption of Avaya's liability, its resulting estimation rested on a number of other factual and legal errors. (*See generally* Dkt. No. 10 at 28–49.)

In reaching its estimation of SAE's trade-secret claims, the Bankruptcy Court concluded that the calculation of "a reasonable royalty [would be] the appropriate measure of damages." *In*

*re Avaya Inc.*, 2018 WL 1940381, at *10. On the basis of Avaya's experts' calculations of Avaya's costs saved by virtue of its assumed misappropriation, the Bankruptcy Court estimated that "the parties would be willing to agree to a royalty of $6.41 for each Delta [power-supply unit] sold containing SAE's trade secrets," which yielded a net estimation of $1.21 million in damages for SAE's claims, exclusive of interest. *Id.* Again, the Bankruptcy Court reached this conclusion largely thanks to its favorable assessment of Avaya's estimates, which it described as having been based on "established methodologies" and "supported by expert testimony on the relevant technical aspects of the trade secrets." *Id.* at *9.

The Bankruptcy Court's estimation, and the methods employed by the Bankruptcy Court in reaching it, are subject to review for abuse of discretion. *In re Mud King Prods., Inc.*, 2015 WL 862319, at *2; *In re Seaman Furniture Co.*, 160 B.R. at 42. This means that the estimation can be reversed only if it was based on "clearly erroneous factual findings or an incorrect legal standard." *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. at 245 (quoting *In re McGowan*, 226 B.R. at 16). Having considered each of SAE's contentions, the Court concludes that the Bankruptcy Court did not abuse its discretion in estimating SAE's trade-secret damages, because the Bankruptcy Court committed no clear error in making its factual findings, nor did it commit legal error in applying the law to those facts.

### a. Apportionment

SAE contends that the Bankruptcy Court erred when it rejected the entire-market-value rule and instead applied a cost-based apportionment when estimating SAE's trade-secret damages. (*See* Dkt. No. 10 at 28–38.)

### i. Entire Market Value

The entire-market-value rule may allow for a damages award of up to all of the profits derived by a trade-secret misappropriator from any infringing products making use of the misappropriated content. It is the appropriate measure of calculating damages only in those circumstances where the basis of customer demand for the infringing product is traceable to the infringing features of the product. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) ("For the entire market value rule to apply, the patentee must prove that the patent-related feature is the basis for customer demand." (quotation marks omitted)). By contrast, "the entire market value rule [is] impermissible" where a plaintiff "fail[s] to present evidence showing that the patented [features] drove demand for the" product. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). Thus, to obtain entire-market-value damages, SAE had to convince the Bankruptcy Court that "the presence of [its trade secrets] . . . motivate[d] consumers to buy a [G650] in the first place." *Id.*

The Bankruptcy Court did not err in finding that SAE's trade secrets did not drive demand for the G650, and accordingly, it also did not err in declining to apply the entire-market-value rule. Avaya submitted to the Bankruptcy Court, primarily in the form of the unrebutted Horenstein report, evidence showing that Avaya had access to "several suitable alternatives to realizing the same functionality without using SAE's alleged trade secret[s]" (A-637; *see also* A-628 (acknowledging that one of SAE's alleged secrets "was a well-known technique" at the relevant time)), and showing that the core features and functioning of the G650 were largely unrelated to the trade secrets built into the power-supply units supplied by SAE (*see, e.g.*, A-642). In crediting Horenstein's unrebutted assessments of the relative import of SAE's trade secrets to the G650's overall functioning, the Bankruptcy Court expressly rejected SAE's

expert's assumption that Avaya would have been unable "to sell any [G650s] without the SAE [power-supply units]." *In re Avaya*, 2018 WL 1940381, at \*10; *see also, e.g.*, *id.* at \*9 ("SAE offered no technical evidence to establish that its trade secrets were of such importance . . . , and Horenstein opined that the trade secrets were not critical to the appropriate functioning of the [power-supply unit].").  Given the Bankruptcy Court's rejection of SAE's expert testimony assuming that Avaya would have been unable to sell the G650 without SAE's trade secrets, and its crediting of Avaya's expert testimony explaining that Avaya *would* have been able to sell the G650 without those trade secrets, the Bankruptcy Court did not err in declining to apply the entire-market-value rule when estimating SAE's trade-secret damages.

### ii.    Cost-Based Apportionment

Where, as here, "an infringing product is a multi-component product with [both] patented and unpatented components, apportionment [is] required."  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (Stoll, J., concurring in denial of rehearing *en banc*) (collecting cases).  Apportioning to SAE the damages fairly associated with Avaya's misappropriation of SAE's trade secrets required the Bankruptcy Court to calculate SAE's damages in a manner that "reflect[ed] the value attributable to the infringing features of the [G650], and no more."  *Ericsson,* 773 F.3d at 1226.  Where the entire-market-value rule is found inapplicable, courts have "generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'"  *LaserDynamics, Inc.*, 694 F.3d at 67 (quoting *Cornell Univ. v. Hewlett-Packard Co.,* 609 F. Supp. 2d 279, 283 (N.D.N.Y. 2009)).

SAE contends that the Bankruptcy Court erred in apportioning damages using a cost-based apportionment method rather than a value-based apportionment method.  (Dkt. No. 10 at 34–38.)  The Bankruptcy Court opted to use cost-based apportionment, meaning that it

20

apportioned damages by calculating "the cost or price of [the misappropriated] component [as] compared to the cost of the entire multi-component product." *In re Avaya, Inc.*, 2018 WL 1940381, at *8. SAE urges that a more appropriate method of apportioning its damages would have been a value-based apportionment, namely an apportionment calculated on the basis of the value of the misappropriated information in comparison to the total value of the final product. SAE asserts that value-based apportionment would have been more appropriate here "because SAE's trade secrets contributed much more to the profitability of the G650 than is reflected in the cost of the particular hardware in which they were instantiated . . . relative to the cost of the G650." (Dkt. No. 10 at 36.)

SAE's argument fails because the Bankruptcy Court expressly rejected SAE's asserted factual basis for applying value-based apportionment. While on appeal SAE asserts that the record before the Bankruptcy Court conclusively demonstrated "the novelty and genius of [SAE's trade secrets, as] was confirmed by the fact that SAE was the only vendor to develop a design which resolved the deficiencies in the G650," (Dkt. No. 10 at 36), the Bankruptcy Court found just the opposite:

> [SAE asserts that] the entire value of the SAE [power-supply unit] is wrapped up in the value of the trade secrets. But SAE offered no technical evidence to establish that its trade secrets were of such importance as to render [cost-based] apportionment inappropriate, and Horenstein opined that the trade secrets were not critical to the appropriate functioning of the [power-supply unit].

*In re Avaya*, 2018 WL 1940381, at *9; *see also, e.g., id.* at *8 ("[A]ll of SAE's damage estimates assume that but for the misappropriation of its trade secrets, Avaya would not have sold *any* [G650s]. This assumption is belied by the proof." (citation omitted)). Given these factual findings, the Bankruptcy Court was free to conclude that Avaya's cost savings attributable to

SAE's trade secrets most fairly represented the "upper value of a royalty a hypothetical licensee would be willing to pay for use of the trade secret and still retain a profit." *Id.* at *10.

Indeed, SAE's value-based apportionment theory appears to simply be a request for application of the entire-market-value rule under another name. "Whether called 'product value apportionment' or anything else, the fact remains that [SAE's proposed] royalty was expressly calculated as a percentage of the entire market value of [the G650] rather than [of SAE's power-supply units] alone. This, by definition, is an application of the entire market value rule." *LaserDynamics, Inc.*, 694 F.3d at 68. SAE's request for value-based apportionment thus runs headlong into "the [same] fundamental concern of the entire market value rule" addressed above, because even if the Bankruptcy Court had elected to apply SAE's proposed value-based apportionment theory to "apportion a royalty rate that account[ed] for [SAE's trade secrets'] contribution[s] [to the G650] only, the exceedingly difficult and error-prone task of discerning [SAE's trade secrets'] value relative to all other components in the [G650 would have] remain[ed]" unresolved. *Id.* at 70. Avaya's experts offered a way of avoiding that difficult and error-prone task with what the Bankruptcy Court deemed a credible and precise method of calculating SAE's damages. The Bankruptcy Court did not err by applying that method.

### b. Failure to Award Unjust-Enrichment and Lost-Profit Damages

SAE contends that the Bankruptcy Court erred when it declined to estimate SAE's trade-secret damages based on Avaya's unjust enrichment and SAE's lost profits, and instead based its estimation on the reasonable royalty Avaya would have paid SAE in light of Avaya's cost savings attributable to the misappropriation of SAE's trade secrets. (Dkt. No. 10 at 38–43.)

The Bankruptcy Court articulated the correct legal standards for assessing SAE's trade-secret damages. *See In re Avaya*, 2018 WL 1940381, at *6–7. As a general rule, "[t]he amount of damages recoverable in an action for misappropriation of trade secrets may be measured either

by the plaintiff's losses . . . or by the profits unjustly received by the defendant." *Id.* at *6

(omission in original) (quoting *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991)).

"However, where these two measures provide inadequate compensation to a plaintiff, or where a

plaintiff's damages are difficult to calculate, courts may employ a reasonable royalty measure of

damages." *Id.* (citing cases awarding reasonable-royalty damages where unjust enrichment

damages were insufficient or difficult to ascertain); *see also, e.g.*, *LinkCo, Inc.*, 232 F. Supp. 2d

at 186 ("Because the plaintiff's loss or the defendant's gain may be very difficult to calculate in

intellectual property cases, a reasonable royalty is 'a common form of award in both trade secret

and patent cases.'" (quoting *Vt. Microsystems*, 138 F.3d at 450)). The Bankruptcy Court

ultimately "conclude[d] that a reasonable royalty [would be] the appropriate measure of

damages" for SAE's trade-secret claims, and estimated what Avaya would have agreed to pay

SAE as a royalty for the trade secrets based on the costs Avaya saved by misappropriating them.

*In re Avaya*, 2018 WL 1940381, at *10.

    SAE urges this Court to remand this case to the Bankruptcy Court in order for it to asses

SAE's lost-profits and unjust-enrichment damages. (Dkt. No. 10 at 38–43.) Prior to addressing

SAE's contentions, it is worth reiterating that "[b]ecause the Bankruptcy Court has such wide

discretion regarding the methodology to be used to estimate a claim, an 'appellate court may

only reverse if the bankruptcy court abused its discretion.'" *In re Mud King Prods., Inc.*, 2015

WL 862319, at *6 (quoting *Bittner*, 691 F.2d at 136). Courts hearing appeals of trade-secret

claim estimations in circumstances where the "[b]ankruptcy [c]ourt [below has] correctly

described the various methods for calculating damages in an action for trade secret

misappropriation," *id.* at *5, and has "carefully considered the specific facts and circumstances

presented in [the] dispute [before] determin[ing] the best method for estimating [the appellant's

trade-secret] claim," *id.* at *6, have afforded bankruptcy courts broad flexibility in deciding how best to assess damages based on the evidence before them.

The Court turns now to SAE's arguments. First, SAE argues that it was entitled to have its lost-profit damages included in the estimation. The Court concludes that SAE forfeited this argument by failing to request these damages below. As the Bankruptcy Court noted, "SAE [sought] damages based on Avaya's unjust enrichment or alternatively, a reasonable royalty," *In re Avaya Inc.*, 2018 WL 1940381, at *6, but SAE never sought lost-profit damages before the Bankruptcy Court (*see* A-1126–28; Dkt. No. 29 at 31–32; Dkt. No. 32 at 18 (SAE not disputing that it did not seek lost-profit damages before the Bankruptcy Court)). SAE's arguments on appeal with respect to its entitlement to lost-profit damages are thus deemed forfeited, and the Court declines to address them. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam) ("Although [courts] may exercise discretion to consider waived arguments where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." (cleaned up)).

Second, with respect to unjust-enrichment damages, SAE asserts that once the Bankruptcy Court had assessed Avaya's cost savings from its alleged misappropriation of SAE's trade secrets, the Bankruptcy Court erred when it used this figure to assess a reasonable royalty rather than unjust-enrichment damages. (Dkt. No. 10 at 38–42.) The Court disagrees. The Bankruptcy Court's findings with respect to Avaya's cost savings did not by law mandate the use of an unjust-enrichment theory of damages rather than a reasonable royalty to estimate SAE's damages. Instead, in circumstances such as those before the Bankruptcy Court, reasonable-

royalty damages may still be "ideal when the commercial context in which the misappropriation occurred requires consideration of multiple factors in order to compensate the plaintiff adequately." *LinkCo, Inc.*, 232 F. Supp. 2d at 186. For example, the Second Circuit has endorsed the use of reasonable-royalty damages in the following circumstances:

> If the trade secret accounts for only a portion of the profits earned on the defendant's sales, such as when the trade secret relates to a single component of a product marketable without the secret, an award to the plaintiff of defendant's entire profit may be unjust. The royalty that the plaintiff and defendant would have agreed to for the use of the trade secret made by the defendant may be one measure of the approximate portion of the defendant's profits attributable to the use.

*Vt. Microsystems, Inc.*, 138 F.3d at 450 (quoting Restatement (Third) of Unfair Competition § 45 cmt. f). And as the Court has already discussed, the Bankruptcy Court expressly found this to be a case where most of Avaya's profits from the G650 could not be fairly attributed to SAE's trade secrets. *See In re Avaya Inc.*, 2018 WL 1940381, at *9.

Given these circumstances, the Court cannot say that the Bankruptcy Court abused its discretion or erred when it "conclude[d] that a reasonable royalty is the appropriate measure of damages" for this case, *id.* at *10, particularly given that "[s]election of the appropriate method of measuring monetary relief [in a trade-secret case] depends on the facts and circumstances of the particular case," Restatement (Third) of Unfair Competition § 45 cmt. d, and that the reasonable royalty is "a common form of award in both trade secret and patent cases," *Vt. Microsystems, Inc.,* 138 F.3d at 450. The Court thus concludes that there was no abuse of discretion in the Bankruptcy Court's decision to frame its damages estimate in the form of a reasonable royalty.

### c.      Import of SAE's Trade Secrets to the G650

SAE contends that the Bankruptcy Court erred when it found that Avaya could have achieved its intended purpose and function for the G650 without SAE's trade secrets.  (Dkt. No. 10 at 43–47.)  As the Court has already discussed, the Bankruptcy Court chose to credit the unrebutted testimony of Avaya's technical expert, Horenstein, who opined that there existed in the market alternative power-supply units that would have permitted the G650 to function as intended, and that SAE's trade secrets provided relatively small contributions to the overall functioning of SAE's power-supply units.  *See In re Avaya*, 2018 WL 1940381, at *3–4.  SAE argues on appeal that given the weight of its evidence contradicting Horenstein's opinions, "[f]or an expert witness or judge to say [what Horenstein and the Bankruptcy Court concluded] would be ridiculous."  (Dkt. No. 10 at 47.)

SAE's arguments essentially call for the Court to reconsider the credibility of Avaya's qualified expert's unrebutted testimony.  The Court has already determined that Horenstein's testimony was admissible and that the Bankruptcy Court's decision to credit that testimony reflected no clear error.  *See supra* Section III.A.1.  Again, Horenstein was indisputably qualified to testify as a technical expert with respect to the import of SAE's trade secrets to the G650's functioning (*see* A-583–85), he conducted a thorough, persuasive, and fact-intensive analysis of the import of SAE's trade secrets to the functioning of the G650 (*see generally* A-577–647), and "SAE did not submit a report from a technical expert to rebut any of Horenstein's conclusions," *In re Avaya*, 2018 WL 1940381, at *4.  The Bankruptcy Court did not err in choosing to credit those conclusions.

### d. Avaya's Service Contracts

SAE contends that the Bankruptcy Court erred in failing to award SAE damages for Avaya's revenue from service contracts associated with the G650. (Dkt. No. 10 at 47–49.) SAE argues that to the extent Avaya obtained revenue from customer service contracts entered into by customers who had purchased the G650 after Avaya had misappropriated SAE's trade secrets, SAE should be entitled to damages accounting for the portions of that revenue attributable to SAE's trade secrets. (*Id.*)

The Bankruptcy Court rejected SAE's request that these damages be included in the estimation on the basis of the finding that this theory of recovery rested "on [SAE's] flawed assumption that [Avaya's] customers would not have purchased an Avaya service contract but for their purchase of a [G650]." *In re Avaya*, 2018 WL 1940381, at *9. Finding "no evidence that [Avaya] sold a service contract specifically covering the" power-supply units misappropriating SAE's trade secrets, the Bankruptcy Court rejected SAE's expert's attempts to attribute any of Avaya's service-contract revenue to SAE's trade secrets, concluding instead that "anyone who purchased a [G650] may have also purchased other Avaya products and entered into a service contract for that reason." *Id.*

SAE failed to produce evidence sufficient to persuade the Bankruptcy Court that any of Avaya's service contracts would not have been entered into but for Avaya's misappropriation of SAE's trade secrets. This is a factual finding reviewed for clear error. Having already concluded that the Bankruptcy Court committed no such error in reaching the factual determination that SAE's trade secrets did not drive customer demand for the G650 itself, the Court similarly concludes that the Bankruptcy Court committed no clear error when it declined to find that SAE's trade secrets drove customer demand for Avaya's service contracts covering

the G650 *and* other Avaya products.  The Bankruptcy Court's unwillingness to include a portion

of Avaya's revenue associated with its customer-service contracts in the estimation of SAE's

trade-secret claims thus provides no basis for reversal.

### C. Estimation of SAE's Contract and Fraud Claims

SAE's last argument on appeal is that the Bankruptcy Court erred when it provided a

zero-dollar estimation of SAE's fraud claim and when it declined to estimate SAE's contract

claim.  (Dkt. No. 10 at 27–28.)  In assessing these contentions, the Court remains mindful that

because "bankruptcy courts are afforded substantial deference in [the claim-estimation] area,"

any errors SAE assigns "to [the Bankruptcy Court's] estimates [of SAE's claims] and its

methods for achieving such estimates . . . will be reviewed only for an abuse of discretion."  *In re*

*Mud King Prods., Inc.*, 2015 WL 862319, at *2 (quoting *Adams v. Cumberland Farms, Inc.,* No.

95-1736, 1996 WL 228567, *4 (1st Cir. May 7, 1996) (unpublished decision)).

The Bankruptcy Court declined to estimate the contract claim "given the size of [that]

[c]laim compared to the size of the bankruptcy cases," reasoning that "reserving for the amount

asserted by SAE [would] not unduly delay the administration of the bankruptcy cases."  *In re*

*Avaya Inc.*, 2018 WL 1940381, at *11.  This decision accords with the "clearly stated purpose of

[11 U.S.C. § 502(c)(1)]," which "is to allow estimation of claims in order to avoid undue delay

in the administration of bankruptcy proceedings," *In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d

Cir. 1993), and SAE points to no binding or persuasive authority that would support requiring

bankruptcy courts to estimate claims where doing so would do nothing to prevent undue delay.

The Court thus concludes that the Bankruptcy Court's finding that estimating SAE's contracts

claims was unnecessary in order to avoid an undue delay of Avaya's bankruptcy proceedings is

one that must be left to a bankruptcy court's sound discretion.  And because SAE identifies no

factual or legal errors underlying that conclusion, this Court must leave that conclusion undisturbed.

Finally, the Court sees no clear error in the Bankruptcy Court's conclusion that SAE failed to produce the "evidence needed to calculate damages based on fraud." *In re Avaya Inc.*, 2018 WL 1940381, at *11. Indeed, in response to Avaya's assertion on appeal that SAE failed to present to the Bankruptcy Court any evidence of its fraud damages (Dkt. No. 29 at 38), SAE repeatedly points to its estimation brief's assessment of its *contract* damages, but points to no portion of its submission that identifies any additional damages attributable to fraud (*see* Dkt. No. 32 at 27–28). Courts have observed that the "the burden of proof in claims estimation is preponderance of the evidence," *In re Ahrens*, No. 16-1065, 2016 WL 6427279, at *8 (B.A.P. 9th Cir. Oct. 27, 2016), and courts in this District have upheld claim estimations of zero dollars where the underlying claims are deemed to "have no basis in law or fact," *In re Granite Broad. Corp.*, 385 B.R. 41, 49 (S.D.N.Y. 2008). The Court here finds no error in the Bankruptcy Court's conclusion that SAE's asserted fraud damages had no basis in fact. The Bankruptcy Court thus did not err when it rendered an estimation of zero dollars for SAE's fraud claim, even given the requisite assumption of Avaya's liability for the underlying fraud.

## IV. Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 6, 2019
New York, New York

J. PAUL OETKEN
United States District Judge